IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEBBIE NIETO,**

    **Plaintiff,**

vs.                                                    No.  00cv0101 BB/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

This matter is before the Court on Plaintiff's (Nieto's) Motion to Reverse and Remand Administrative Decision, filed September 27, 2000.  The Commissioner of Social Security issued a final decision denying Nieto's application for supplemental security income benefits. The Court, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is not well taken and recommends that it be DENIED.

Nieto, now forty years old, filed her application for supplemental security income benefits on May 11, 1988, alleging disability which commenced in 1976 due to sacroiliitis[1], tendinitis, bursitis and narrowing at L4 and L5.  On May 3, 1989, the Commissioner's Administrative Law Judge (ALJ) found that Nieto's impairments met the listings, and that she was thus disabled within the meaning of the Social Security Act.  On December 5, 1997, the Commissioner notified Nieto

---

[1] Inflammation of the sacroiliac joint. *Stedman's Medical Dictionary* 1565 (26th ed. 1995).

her disability had ceased on November 1, 1997, and her benefits were being terminated.  Nieto appealed.  The ALJ held a hearing on September 17, 1998.  On November 27, 1998, the ALJ found that Nieto's condition had improved.  Nieto had no past relevant work.  However, the ALJ found that "her age, education, work history, and functional capacity permitted a successful adaptation to a significant number of other jobs in the national and regional economies."  Tr. 14.  The Appeals Council denied Nieto's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Nieto seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  In a benefit termination case, the regulations of the Social Security Administration require the Commissioner to apply the following specific evaluation steps to determine whether the disability will continue.

    1.    Is the claimant engaged in substantial gainful activity? If the claimant is (and any

>applicable trial work period has been completed), the disability has ended.

2. Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. § 404, Subpart P? If so, the disability will continue.

3. Has there been a medical improvement? If yes, is the medical improvement related to the ability to do work?

4. If there has been medical improvement, does the claimant have a severe impairment or combination of impairments? If not, the disability has ended.

5. Can the claimant perform her past relevant work? If yes, the disability has ended.

6. If not, does the claimant have the residual functional capacity to perform any other work?

20 C.F.R. § 416.994(b)(5).

The ultimate burden of proof lies with the Commissioner in a termination proceeding. *Glenn v. Shalala*, 21 F.3d 983, 987 & n.2 (10th Cir. 1994). Medical improvement is defined as any decrease in the medical severity of the impairments present at the time of the most recent favorable medical decision of disability. 20 C.F.R. § 416.944(b)(1)(i). A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairment(s). *Id.* Symptoms are a claimant's own description of his or her physical or mental impairment. 20 C.F.R. § 416.928(a). The claimant's statements alone are not enough to establish that there is a physical or mental impairment. *Id.* Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from a claimant's statements. 20 C.F.R. § 416.928(b). Signs must be shown by

medically acceptable clinical diagnostic techniques. *Id.* Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques, i.e. chemical tests, EEG, EKG, x-rays. 20 C.F.R. § 416.928(c).

In support of her motion to reverse and remand, Nieto contends (1) the ALJ's finding that there had been medical improvement related to Nieto's ability to work is not supported by substantial evidence and is contrary to law; (2) the ALJ did not fulfill his duty to develop the record; (3) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law; and (4) the ALJ erred in applying the grids when Nieto's nonexertional impairments diminished her work capability.

The ALJ found the evidence established there was medical improvement in Nieto's impairments by the date her disability had ceased, November 1, 1997. Tr. 13. The ALJ also found Nieto's impairments continued to have more than a minimal effect on her ability to work. *Id.* After finding Nieto's impairment, singly or in combination, did not meet or equal any of the listings, the ALJ determined Nieto's medical improvement was related to her ability to work, and she had the residual functional capacity (RFC) for at least sedentary work.[2] *Id.* The ALJ specifically reviewed Section 1.00 and concluded Nieto's impairments fell short of Listings level severity because she did not have the required significant limitation of motion to comport with the

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567 (a).

4

requirements of the Listings.  *Id.*  The ALJ also found Nieto's testimony of subjective complaints and functional limitations not credible.  *Id.*

The ALJ based his findings on the November 15, 1997 consultative evaluation of Dr. Greenbaum.  Tr. 146-150.  Dr. Greenbaum diagnosed Nieto with chronic low back and leg pain, possibly secondary to degenerative lumbar disease and chronic knee pain, etiology undetermined.  Tr. 148.  Dr. Greenbaum found lumbosacral spinal and diffuse lower back tenderness, mild bilateral CVA tenderness but no muscle spasm or deformity.  Tr. 147.  The right knee revealed no swelling, deformity, erythema, or decreased range of motion.  *Id.*  Based on his examination and findings, Dr. Greenbaum opined Nieto was able to sit without difficulty.  Tr. 148.  Dr. Greenbaum also found walking, lifting and bending were all normal at the time of examination but opined it was possible that with prolonged walking, lifting, and bending, pain and limitation of activity would occur.  *Id.*

The ALJ also relied on Nieto's testimony at the September 17, 1998 administrative hearing.  At the administrative hearing, Nieto testified it had been "quite a while" since she saw her doctor and could not say how long it had been.  Tr. 170.  When questioned by the ALJ if it had been over five years, she replied "maybe a year or two."  *Id.*  Nieto testified she cared for four children, ages 17, 16, 8 and 9 months.  *Id.*  She testified she could lift her nine month old infant who weighed seventeen pounds.  Tr. 172.  She also testified she did most of the house cleaning.  *Id.*  Nieto further testified she took Tylenol Extra Strength for her pain when she needed it, and there were days when she did not need it at all.  *Id.*

Additionally, the ALJ relied on the Dr. Golish's RFC assessment.  Dr. Golish, the state agency physician, completed the RFC form on December 1, 1997, and determined Nieto could do

5

light work.  Although Dr. Golish did not examine Nieto, he relied on Dr. Greenbaum's report.  On March 17, 1998, Dr. Stewart, also a state agency physician, completed another RFC form and agreed with Dr. Golish's determination that Nieto could do light work.  Dr. Stewart also relied on Dr. Greenbaum's findings.

Dr. Greenbaum's consultative examination and Nieto's testimony demonstrate a decrease in the medical severity of Nieto's impairments since the most recent favorable medical decision of disability.  The ALJ's determination that Nieto's medical improvement was related to her ability to work, and that she had the residual functional capacity (RFC) for at least sedentary work is supported by substantial evidence.

Nieto also complains the ALJ failed in his duty to develop the record when he failed to arrange for additional testing, both x-rays and a blood work-up.  Nieto argues that because the ALJ did not have current x-ray reports or blood tests he could not determine that her condition had improved.[3]  The Court disagrees.  The ALJ determined Nieto's condition had improved based on improvement of signs and symptoms.  Nieto testified she had not been to a doctor in such a long time that she could not quite remember how long it had been since she had seen one.  Nieto also testified she did not require strong pain medication and relied on Tylenol Extra Strength when she had pain because there were days when she did not need any pain medication at all.  Nieto further testified she could lift a seventeen pound infant, do her house cleaning and walk several blocks when she took Tylenol.  This is improvement when compared to Nieto's medical condition at the time of the initial favorable medical decision of disability.  At that time, Nieto was

---

[3] Although the ALJ ordered x-rays, Nieto was unable to have them done due to pregnancy.

visiting her doctors often, required narcotics and steroids to control her pain, and needed crutches to walk  Tr. 97.  There was also documentation that Nieto was unable to walk due to severe left leg pain.  *Id.*

The ALJ also relied on improvement in signs.  Dr. Greenbaum's examination revealed (1) no muscle spasms or deformity of the back; (2) no evidence of clubbing, cyanosis or edema of the extremities; (3) no evidence of right knee deformity, erythema or decreased range of motion.; (4) grip and motor strength were within normal; (5) coordination was normal; (6) Nieto had the ability to squat; (7) Nieto could sit without difficulty;  and (8) Nieto's ability to walk, lift and bend were all normal. Tr. 146-47.  This also is improvement when compared to Nieto's medical condition at the time of the initial favorable medical decision of disability.  At that time, her treating physician reported "inflamation of the interspinous ligaments of the upper back, iliolumbar ligaments of the lower back and medial and lateral collateral ligaments of the right knee."  Tr. 53.

"[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition . . . ."  *Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at 4* (10th Cir. July 2000)(unpublished disposition).  Substantial evidence supports the ALJ's determination that Nieto was functioning at a higher level since the most recent favorable medical decision of disability without the need for additional x-rays or lab work.

Nieto also implies the ALJ violated his duty to develop the record when he failed to further investigate her complaint that she suffered from sleep apnea.  At the end of her testimony, Nieto testified "[a]t night I have trouble sleeping because I have sleep apnea plus I have trouble with my back, my knees."  This was the only mention of sleep apnea in the record.  In order to

7

raise an issue requiring further investigation, the claimant must present some objective evidence suggesting the existence of a condition which could have a material impact on the disability decision. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.* In this case, the ALJ had nothing more than Nieto's unsupported comment that she suffered from sleep apnea.

Nieto also contends the ALJ's credibility determination is contrary to law because he failed to articulate the basis for his determination. *See Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995). The Court disagrees. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). It is clear from the ALJ's decision that he discounted the significance of Nieto's subjective complaints of pain to the degree she alleged because of the lack of objective corroborative evidence.

Finally, Nieto argues the ALJ improperly relied on the grids to support his finding of no disability. "[A]n ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in the RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). In addition, "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Id.* "The pain must interfere with the ability to work." *Id.* In this case, the ALJ determined Nieto's pain did not interfere with her ability to work. This determination is supported by substantial evidence. Accordingly, the ALJ properly relied on the grids to support his finding of no disability.

## **RECOMMENDED DISPOSITION**

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Nieto's Motion to Reverse and Remand Administrative Decision should be denied.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.